EXHIBIT A

STATE COURT CASE FILE

**Document List**

New York County Supreme Court

Index #  950118/2019     Created on:02/17/2020 05:34 PM

Case Caption:  **DAVID VAN MANEN v. BOY SCOUTS OF AMERICA et al**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | Processed | 08/27/2019 | Dowd, M. |
| 2 | NOTICE OF APPEARANCE (PRE RJI)<br>Notice of Appearance 9-25-19 | Processed | 09/25/2019 | Kenny, M. |
| 3 | NOTICE OF APPEARANCE (PRE RJI) | Processed | 10/09/2019 | Sweeney, G. |
| 4 | STIPULATION - SERVICE | Processed | 11/19/2019 | Sweeney, G. |
| 5 | ORDER - ADMINISTRATIVE<br>AO #371  Hon. George J. Silver | Processed | 12/11/2019 | Court User |
| 6 | ORDER - AMENDED<br>Administrative Order # 371  AMENDED  Hon. George J. Silver | Processed | 12/11/2019 | Court User |
| 7 | NOTICE OF CHANGE OF FIRM NAME OR ADDRESS (PRE RJI) | Processed | 01/31/2020 | Dowd, M. |
| 8 | ORDER - ADMINISTRATIVE<br>AO #40 Hon. George J. Silver | Processed | 02/04/2020 | Court User |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

DAVID VAN MANEN,

                        Plaintiff,

                -against-

BOY SCOUTS OF AMERICA, and
GREATER NEW YORK COUNCILS, BOY SCOUTS
OF AMERICA,

-------------------------------------------------------------------X

Index No.
Date Purchased:

Plaintiff designates
NEW YORK
County as the place of trial.

The basis of the venue is
Defendants' place of
business.

**SUMMONS**

To the above named Defendant(s)

           YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the Plaintiff's Attorney within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated: New York, New York
      August 27, 2019

                                _____

                                MICHAEL G. DOWD
                                600 Third Avenue, 15th Floor
                                New York, NY 10016
                                (212) 751-1640

                                SWEENEY, REICH & BOLZ, LLP
                                By: Gerard J. Sweeney, Esq.
                                1981 Marcus Avenue, Suite 200
                                Lake Success, NY 11042
                                (718) 459-9000

                                Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
DAVID VAN MANEN,

                                               Index No.
                 Plaintiff,              Date Filed:


                       -against-

BOY SCOUTS OF AMERICA, and            **VERIFIED COMPLAINT**
GREATER NEW YORK COUNCILS, BOY SCOUTS
OF AMERICA,


                          Defendants.
-----------------------------------------------------------------------X

      Plaintiff, DAVID VAN MANEN, by HIS attorney, MICHAEL G. DOWD, complaining

of Defendants, hereby alleges the following:

### JURISDICTION AND VENUE

1.      This action is timely commenced pursuant to the New York State Child Victims

      Act, dated February 14, 2019 and CPLR § 214-g.

2.      This Court has jurisdiction pursuant to CPLR § 301 as Defendants' principal

      place of business is in New York and because much of the unlawful conduct

      complained of herein occurred in New York.

3.      Venue is proper pursuant to CPLR § 503 because New York County is the

      principal place of business of Defendants.  In addition, many of the events

      giving rise to this action occurred in New York County.

### AS AND FOR A FIRST CAUSE OF ACTION

### (NEGLIGENT SUPERVISION)

4.      The Plaintiff, DAVID VAN MANEN (hereinafter "PLAINTIFF") was born on

      March 10, 1956. He is a resident of Beulah, Colorado.

1

5. At all times relevant, PLAINTIFF was an unemancipated minor who was invited to participate in meetings, events, and activities run and sponsored by Defendants BOY SCOUTS OF AMERICA and GREATER NEW YORK COUNCILS.

6. Upon information and belief, at all times mentioned herein, the BOY SCOUTS OF AMERICA (hereinafter "BSA") was and is a federally chartered corporation authorized to do business in New York. Its principal headquarters are located in Irving, Texas, which is in Dallas County.

7. Upon information and belief, at all times mentioned herein, the GREATER NEW YORK COUNCILS of the Boy Scouts of America (hereinafter "GNYC") was and is a domestic nonprofit corporation organized under the laws of the state of New York. Its principal headquarters are located in New York, New York, which is in New York County.

8. Defendant BSA and Defendant GNYC will be referred to collectively as "Defendants."

9. Upon information and belief, Defendants jointly own and operate scouting programs which invite and seek out the participation of children. Defendants, through their agents and officials, have control over those activities involving children. Defendants have the power to appoint, supervise, monitor, restrict, and fire each person working with children within Defendants' scouting programs.

10. In 1916, Congress granted BSA a federal charter, now codified as 36 U.S.C. Ch. 309. Under that Charter, Congress granted BSA the exclusive right to BSA's name, emblems, badges, and descriptive words and markings.

11. Since 1910, BSA has derived millions of dollars a year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to

2

affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C. §80305). BSA has realized income from these assets by marketing them to parents and their children, including PLAINTIFF and his parents. In addition to its exclusive license, BSA enjoys numerous taxpayer subsidies, including: (1) free access to national forest lands (16 U.S.C. § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C.§2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases world-wide (10 U.S.C. §2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. §40731); (6) free military surplus (10 U.S.C. Ch. 943); and (7) Department of Agriculture grants (7 U.S.C. §7630).

12. BSA's marketing includes encouraging parents to enroll their children in Defendants' scouting programs and activities. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes over-night outings, camping events, and trips away from parents. The system is reward-based, obligating the child to purchase emblems, badges, and other scouting paraphernalia, which in turn creates profit for the organization.

3

13.     BSA implements scouting programs through local Boy Scouts of America councils to which it issues licenses to the Boy Scouts of America name, emblems, badges, markings and youth programs. BSA requires local councils and troops within a local council to strictly adhere to BSA's organizational charter and "Standards of Leadership" requirements.

14.     At all times relevant, Defendant GNYC and the Troop of which PLAINTIFF was a member were the agents of the BSA and were subject to BSA's authority and control.

15.     BSA is one of the largest nonprofits in the United States, with income exceeding hundreds of millions per year. BSA is the largest youth organization in the United States, serving more than 2.7 million youth members, ages ten to eighteen, with over one million adult volunteers.

16.     Shortly after its inception in 1910, Defendant BSA became aware that a significant number of its adult Boy Scout leaders ("Scout Leaders") were using their position of trust and authority as Scout Leaders to manipulate and sexually abuse youth participating in Defendant BSA's scouting programs.

17.     Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American public. Simultaneously, BSA concealed from scouts and their parents BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years. BSA also misrepresented to scouts and their parents that scouts were safe in scouting programs, when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult Scout Leaders. BSA made said misrepresentations to PLAINTIFF and his parents.

4

18.     By the early 1920s, Defendant BSA implemented what it called the "Red Flag"

system to identify Scout leaders whom Defendant BSA considered "ineligible" to

hold positions as Scout Leaders. This internal system eventually became known

as the "Ineligible Volunteer Files" (hereafter "I.V. Files"). Historically, the most

common reason for a Scout Leader to be placed in the I.V. Files has been

allegations of sexual abuse of minors. This subset of I.V. Files has been referred

to by Defendants as the "Perversion Files." Some of these files can be viewed at

the following website: https://www.crewjanci.com/resources/boy-scout-

perversion-files/.

19.     By 1935, Defendant BSA had already identified and removed over one thousand

adult men from their positions as Scout Leaders for sexually abusing boys

involved in Defendant BSA's scouting programs.

20.     Between 1935 and the events alleged herein in or around 1966-1969, Defendant

BSA had already identified thousands of additional Scout Leaders who were

believed to have or were alleged to have sexually abused minor boys in Defendant

BSA's scouting programs. Not all of these adults were removed from their

positions as Scout Leaders. Rather, at some point prior to 1955, Defendant BSA

implemented a secret, internal "probation program." Under Defendant BSA's

"probation program," a significant number of Scout Leaders believed to have

sexually abused boys were allowed to continue on as Scout Leaders with access to

minors. Neither scouts nor their parents were informed if a Scout Leader was on

"probation," or that the reason for the probationary status was for sexually

abusing minors. This probationary status evidenced the BSA's continued policy of

denying or otherwise covering up the problem of sexual abuse within its ranks of

5

Scout Leaders.

21. Defendant BSA went to significant lengths to keep the existence of their "Perversion File" system and the problem of sexual abuse by Scout Leaders a secret from scouts and the public. Local councils were instructed – and agreed – not to keep Perversion File materials at their offices, but rather to send everything to BSA national and destroy any copies.

22. Through the Perversion files, decades prior to the abuse of PLAINTIFF, the BSA possessed a unique knowledge of both the profile of Scout Leaders who sexually abuse scouts as well the methods these sexual abusers used to successfully infiltrate scouting. The I.V. files highlight the vulnerabilities of Defendants' scouting programs and activities, including sexual abusers' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by sexual abusers that had entered or were attempting to enter scouting. For a century, BSA has known of distinctive characteristics of BSA's scouting programs that render scouts particularly prone to child sexual abuse by Scout Leaders.

23. By 1935, BSA had accumulated approximately hundreds of files on child molesters that had successfully infiltrated or attempted to infiltrate its programming. Between 1935 and the events alleged herein in or around 1966-1969, Defendant BSA received thousands of reports of Scout Leaders sexually abusing boys in their programs. These reports were continuous in frequency over time and were spread throughout the geographic bounds of the Defendant BSA's scouting programs.

6

24.      In the 1970s, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files. BSA executives kept no retention logs showing which or how many of the files BSA destroyed. BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save. Approximately 6,000 files survived BSA's file purge and are in BSA's possession. Approximately 1,900 of those files are now in the public domain. The exact number of sexual abuse reports received by BSA is unknown, in part because of the mid-1970s file purge. By 2005, BSA's secret cache of files (Perversion Files) on child molesters were in the thousands. These reports demonstrated to Defendant BSA that it had a continuous and systemic problem of adult volunteers sexually abusing boys participating in the Defendant's scouting programs.

25.      Defendants' knowledge of the danger of sexual abuse of boys in scouting included knowledge about how child abusing Scout Leaders accomplished their abuse. Prior to the abuse of PLAINTIFF by BERNARD CHMIELESKI, the Defendants knew or should have known that child molesting Scout Leaders groomed their victims to accomplish their abuse and understood how such grooming was accomplished (including using the scouting programs and activities to win the trust of victims, spending time alone with victim, and using mechanisms to lower victims' inhibitions and maintain victims' silence).

26.      The I.V. Files, created prior to the PLAINTIFF's participation in scouting, demonstrate that BSA had evidence (1) that scouting was continuously attracting pedophiles across time and geography and (2) of scouting's distinctive

7

characteristics that make it attractive to pedophiles, including:

a. Providing a sexual abuser access to boys alone and away from their parents in secluded settings like camp-outs and overnight hikes;

b. Providing opportunities for sexual abusers to abuse a scout by getting him into situations where they have to change clothing or spend the night with him;

c. Providing sexual abusers an opportunity to volunteer to spend time with and have access to minor scouts;

d. Conditioning and educating boys to the concept of strict obedience to the Scout Leader and a bonding mechanism that sexual abusers utilize;

e. Promoting the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a sexual abuser to keep his victims silent and compliant;

f. Conducting no criminal background checks on volunteers;

g. Not prohibiting adults from sleeping in tents with boys overnight;

h. Not prohibiting adult leaders from spending time alone with individual scouts; and

i. Not prohibiting adult leaders from having contact with scouts outside of authorized scouting activities.

j. Not specifically prohibiting Scout Leaders from having scouts to their home to work on scout related projects like merit badges.

27. The I.V. Files further demonstrate that, for decades BSA:

k. Re-admitted sexual abusers who had previously been removed for child abuse "probation," thereby exposing unsuspecting children to sexual

8

abuse;

l.    Had a practice of not reporting incidents of abuse to law enforcement;

m.    Had a pattern of accommodating sexual abusers, in which they would be permitted to resign from scouting and BSA would agree not to report the abuse to authorities;

n.    Failed to produce its I.V. Files to its review board and scout-safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

o.    Refused to fingerprint, photograph, or perform background checks on its adult volunteers, allowing removed sexual abusers using an alias to sneak back into scouting through another troop;

p.    Refused to utilize widely-accepted organizational best practices that would establish reasonable barriers to intrusion by sexual abusers;

q.    Refused to educate local councils, staff, and troop leaders regarding the true risks posed by sexual abusers to scouts; and

r.    Refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

28.    Prior to abuse alleged herein in or around 1966-1969, Defendant BSA also knew or should have known that its I.V. File system did not function to prohibit all known predators from participating in scouting, was otherwise flawed, and in many cases ineffective to address the sustained and systemic problem of sexual abuse within its programming.

9

29. Despite their knowledge of the danger of sexual abuse of boys in scouting, at no time prior to 2010 when the BSA altered the warnings in its Scout Handbook, did Defendants specifically warn boys in their programs or their parents, about this known danger, nor implement reasonable and feasible child abuse prevention policies. Nor did BSA alert authorities to the nature and scope of this known danger. Instead, Defendants intentionally and actively concealed the continuous and systemic danger of sexual abuse of scouts in their programming. Defendants also actively promoted and represented to the public that their scouting programs were safe and wholesome, and their adult leaders were safe and trustworthy.

30. At all times relevant to this Complaint, Defendants invited and otherwise encouraged the participation of minors, including PLAINTIFF, in their scouting programming and selected adults to serve in leadership positions.

31. BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult leaders and volunteers. BSA made repeated false counterfactual claims that the number of child sexual abusers in its programming was insignificant, that scouts were reasonably safe from sexual abuse by adult leaders, and that BSA is not a magnet for sexual abusers, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity. The PLAINTIFF alleges that they trusted BSA and that they reasonably relied upon the BSA's representations that it presented a moral and safe place for minors.

32. Sometime after PLAINTIFF joined the scouts in approximately 1966, BERNARD CHMIELESKI began a pattern of grooming PLAINTIFF for the purpose of sexually abusing him. This grooming included but was not limited to,

10

complimenting PLAINTIFF and giving him special attention, praise, and privileges. BERNARD CHMIELSKI'S grooming of PLAINTIFF included isolating PLAINTIFF at CHMIELSKI'S home, showing PLAINTIFF pornographic pictures of another boy from PLAINTIFF'S Boy Scout Troop performing oral sex on CHMIELESKI, attempting to ply PLAINTIFF with alcohol, and having PLAINTIFF get in bed nude with CHMIELESKI and another of CHMIELESKI's victims from PLAINTIFF'S Boy Scout Troop, all for the purpose of violating PLAINTIFF'S appropriate boundaries to groom PLAINTIFF for sexual abuse.

33. After PLAINTIFF joined the scouts, BERNARD CHMIELESKI began sexually abusing PLAINTIFF. Said abuse included improper physical contact, including CHMIELESKI fondling PLAINTIFF'S genitals and attempting to force PLAINTIFF to engage in oral intercourse. Said abuse will be described further at trial.

34. BERNARD CHMIELESKI sexually abused PLAINTIFF on numerous of occasions between 1966 and 1969. This abuse occurred in BERNARD CHMIELESKI's cabin in upstate New York and other places.

35. PLAINTIFF participated in scouting from approximately 1966 through 1969.

36. Upon information and belief, PLAINTIFF was taught and otherwise informed by Defendants by word and deed that he should obey, trust, and respect the Defendants and BERNARD CHMIELESKI.

37. Upon information and belief, at all times mentioned herein, Defendants knew that minors sexually abused in their programs would suffer psychological and emotional injuries, as well as other damages.

11

38.     Upon information and belief, at all times mentioned herein, Defendants aided and abetted the concealment of criminal conduct by failing and refusing to report allegations of child sexual abuse to appropriate New York civil authorities.

39.     Upon information and belief, Defendants selected or accepted BERNARD CHMIELESKI as a SCOUTMASTER/ADULT LEADER, or in a similar capacity as a Scout Leader, for the PLAINTIFF's Boy Scout Troop, located in Brooklyn, New York.

40.     Defendants authorized and empowered BERNARD CHMIELESKI to perform all duties of a Scout Leader within the Troop to which PLAINTIFF belonged, including the authority and power to do the following: to provide instruction, counseling, moral guidance, and physical supervision of boys participating in Boy Scout programs and activities; to enforce the rules governing the boys' participation; and to undertake other duties. Defendants knew that as part of his duties as a Scout Leader, BERNARD CHMIELESKI would be in a position of trust, confidence, and authority over the boys involved in scout programs, including PLAINTIFF.

41.     As a Scout Leader, BERNARD CHMIELESKI befriended PLAINTIFF; gained the trust and confidence of PLAINTIFF's family as a trusted authority figure, mentor and leader of boys; and gained the permission and support of PLAINTIFF and his parents to spend substantial periods of time alone with PLAINTIFF. As a Scout Leader, BERNARD CHMIELESKI also gained the directive of PLAINTIFF's parents to minor PLAINTIFF that he respects those in authority with Defendants.

12

42.     Thereafter, BERNARD CHMIELESKI acted as a Scout Leader toward
        PLAINTIFF, supervised him during scouting outings and activities, and exercised
        authority *in loco parentis* over PLAINTIFF during scouting events.

43.     There was a special relationship between PLAINTIFF and Defendants giving rise
        to a duty by Defendants to protect PLAINTIFF from harm.

44.     As a result of BERNARD CHMIELESKI's authorized conduct as a Scout Leader,
        PLAINTIFF was conditioned to trust BERNARD CHMIELESKI, to comply with
        his directions, and to respect BERNARD CHMIELESKI as a person of authority,
        including in moral and ethical matters.

45.     Using the power, authority, and trust of his positions vested in him by Defendants,
        and availing himself of Defendants' representations that the scout programs were
        a moral and safe place for boys, BERNARD CHMIELESKI subjected
        PLAINTIFF to various acts of sexual abuse while PLAINTIFF was a minor
        (hereinafter "the sexual abuse").

46.     BERNARD CHMIELESKI would invite PLAINTIFF to his home and his cabin
        in upstate New York, and give PLAINTIFF rides in his vehicle. By inviting the
        minor PLAINTIFF into his residences and vehicle alone, BERNARD
        CHMIELESKI was in violation of BSA's "two deep" rule, which requires that at
        least two adults be present at all times during all scouting events and all other
        activities related to the scouting programs.

47.     The methods used by BERNARD CHMIELESKI to accomplish his sexual abuse
        of PLAINTIFF were substantially similar to methods known to Defendants to
        have been used previously by numerous other adult leaders to accomplish sexual
        abuse of other minors. These methods were known to the Defendants at least 31

13

YEARS prior to the sexual abuse of PLAINTIFF.

48. On information and belief, the grooming behavior and boundary violations BERNARD CHMIELESKI employed, including but not limited to the conduct described in Paragraphs 43 and 44, were carried out in open and observable ways.

49. On information and belief, other adult leaders within Defendants' organizations were aware of BERNARD CHMIELESKI's behaviors described in Paragraphs 43 through 45, and knew or should have known that BERNARD CHMIELESKI posed a danger of sexual abuse to minor scouts, including Plaintiff.

50. Defendants knew or should have known the danger that sexual abusers presented to scouts long before PLAINTIFF was abused by BERNARD CHMIELESKI. Despite this knowledge, Defendants ignored the danger and permitted BERNARD CHMIELESKI and other sexual abusers in scouting to prey upon minor scouts, including PLAINTIFF, by failing to warn them of the danger and failing to implement reasonable policies to prevent and identify child sexual abuse in scouting programs.

51. Upon information and belief, Defendants had a duty to protect PLAINTIFF as a minor scout from BERNARD CHMIELESKI's criminal sexual acts.

52. Upon information and belief, Defendants failed to adequately and completely supervise BERNARD CHMIELESKI and as a result of this failure and negligence, proximately caused PLAINTIFF to be sexually abused by BERNARD CHMIELESKI.

53. The aforementioned occurrences of sexual abuse were caused by the negligence, carelessness, recklessness, and the willful, wanton, reckless and grossly negligent conduct of Defendants and their agents, servants, and/or employees, in failing to properly and adequately supervise the conduct of BERNARD CHMIELESKI as it

14

related to PLAINTIFF.

54. By reason of the foregoing, PLAINTIFF sustained physical and psychological injuries, including but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to HIS nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasing nature; and that PLAINTIFF as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

55. That by reason of the foregoing, Defendants are also liable to PLAINTIFF for punitive and exemplary damages.

56. It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7) and 1602(11).

57. That the amount of damages sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION

### (NEGLIGENT FAILURE TO WARN)

58. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth at length herein.

59. Upon information and belief, prior to and at all times herein mentioned, Defendants and their agents, servants, and employees, knew or should have

15

known that BERNARD CHMIELESKI violated Defendants' relevant rules, regulations and protocols prohibiting adult leaders like BERNARD CHMIELESKI from sexually abusing and otherwise harming minor scouts, including PLAINTIFF.

60. The Defendants and their agents, servants, and employees were negligent, careless and reckless and acted willfully, wantonly and were grossly negligent in failing to warn PLAINTIFF that the failure of BERNARD CHMIELESKI to abide by Defendants' rules, regulations and protocols regarding prohibitions on employees being alone with minor scouts put PLAINTIFF at risk for being sexually abused by BERNARD CHMIELESKI.

61. By reason of the foregoing, PLAINTIFF sustained physical and psychological injuries, including but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to HIS nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasing nature; and that PLAINTIFF as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

62. That by reason of the foregoing, Defendants are also liable to PLAINTIFF for punitive and exemplary damages.

63. It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7) and 1602(11).

16

64. That the amount of damages sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION

## (NEGLIGENT FAILURE TO PROVIDE A SAFE AND SECURE ENVIRONMENT)

65. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth at length herein.

66.  The Defendants assumed a duty to protect the safety and welfare of PLAINTIFF as more fully set forth above, when PLAINTIFF participated in their scouting programs. This duty imposed upon said Defendants, the duty to provide a reasonably safe and secure environment for PLAINTIFF while HE was participating in scouting programs.

67. When PLAINTIFF was in said Defendants' care, said Defendants failed to exercise the degree of care that a reasonably prudent parent would have exercised under similar circumstances.

68. Defendants and their agents and employees were negligent, careless and reckless and acted willfully, wantonly and were grossly negligent in failing to provide a safe and secure environment for PLAINTIFF while HE participated as a minor in scouting programs and as such were sexually abused by BERNARD CHMIELESKI.

69. By reason of the foregoing, PLAINTIFF sustained physical and psychological injuries, including but not limited to, paruresis, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to HIS nervous system, and has been caused to suffer physical pain and mental anguish, emotional and

17

psychological damages as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasing nature; and that PLAINTIFF as a result has become and will continue to be obligated to expend sums of money for medical expenses for treatment of said maladies.

70. That by reason of the foregoing, Defendants are also liable to PLAINTIFF for punitive and exemplary damages.

71. It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(7) and 1602(11).

72. That the amount of damages sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

WHEREFORE, the Plaintiff demands judgment against the Defendants, together with compensatory and punitive damages, and the interest, costs and disbursements pursuant to the causes of action herein.

Dated: New York, New York
August 27, 2019

MICHAEL G. DOWD
Attorney for Plaintiff
600 Third Avenue, 15th Floor
New York, NY 10016
(212) 751-1640

SWEENEY, REICH & BOLZ, LLP
By: Gerard J. Sweeney, Esq.
1981 Marcus Avenue, Suite 200
Lake Success, NY 11042
(718) 459-9000

Attorneys for Plaintiff

18

## VERIFICATION BY ATTORNEY

MICHAEL G. DOWD, an attorney being duly admitted before the courts of the State of New York, hereby affirms the following under penalties of perjury:

That he is an attorney for the Plaintiff in the above-entitled action with offices located at 600 Third Ave, New York, New York; that he has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to his knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

That the reason why this verification is made by deponent instead of Plaintiff is because Plaintiff is not within the County of New York where deponent has his office. Deponent further says that the grounds of his belief as to all matters in the VERIFIED COMPLAINT not stated to be upon his knowledge are based upon conversations with the Plaintiff and other writings relevant to this action.

Dated:  New York, New York
        August 27, 2019

                                        MICHAEL G. DOWD
                                        Attorney for Plaintiff
                                        600 Third Avenue, 15th Floor
                                        New York, NY 10016
                                        (212) 751-1640

19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
DAVID VAN MANEN,

        Plaintiff,

    -against-

BOY SCOUTS OF AMERICA, and
GREATER NEW YORK COUNCILS,
BOY SCOUTS OF AMERICA,

        Defendants.
-------------------------------------------------------------X

Index No.: 950118/2019

**STIPULATION OF SERVICE
AND EXTENSION OF TIME**

       **IT IS HEREBY STIPULATED AND AGREED**, by and between attorneys for Plaintiff

DAVID VAN MANEN, and attorneys for Defendants BOY SCOUTS OF AMERICA and

GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA ("BSA Defendants") that

MICHAEL L. KENNY, JR. ESQ., of WIGGIN & DANA LLP hereby acknowledges and accepts

service of the Summons, Complaint and Electronic Filing Notice on behalf of the BSA Defendants

in this action and consents to the jurisdiction of this Court;

       **IT IS FURTHER STIPULATED AND AGREED**, by and between counsel for the

respective parties, that BSA Defendants shall waive any affirmative defenses related to

jurisdiction based on service;

       **IT IS FURTHER STIPULATED AND AGREED**, that those parties agree that the time

for the BSA Defendants to answer or otherwise move against the Complaint shall be extended

sixty (60) days from the date of this Stipulation and that if more time is needed that the

Defendants will so inform Plaintiff no later than five (5) days before the 60 day period is up;

       **IT IS FURTHER STIPULATED AND AGREED**, that at the time BSA Defendants

answer or otherwise move against the Complaint, BSA Defendants shall provide to Plaintiff's

Page **1** of 2

counsel copies of the perversion files and/or any registration records in their possession *under an agreed protective order (MK)*

pertaining to the perpetrator identified in the above captioned action;

**IT IS FURTHER STIPULATED AND AGREED,** by and between counsel for the

respective parties, that counsels' signatures on this Stipulation via facsimile or email, and in

counterpart, shall be deemed good and sufficient for all purposes. This Stipulation may be

electronically filed with the Clerk of the Court without further notice.

Dated: ~~October~~ *November 14*, 2019

MICHAEL G. DOWD, ESQ.
600 Third Avenue, 15th Floor
New York, New York 10016
(212) 751-1640

MICHAEL L. KENNY, JR. ESQ.
WIGGIN & DANA LLP
437 Madison Avenue, 35th Floor,
New York, NY 10022
(212) 551-2628

GERARD J. SWEENEY, ESQ.
SWEENEY, REICH & BOLZ, LLP
1981 Marcus Avenue, Suite 200
Lake Success, New York 11042
(718) 459-9000

*Attorneys for Defendants Boy Scouts of America,
and Greater New York Councils, Boy Scouts of
America*

*Attorneys for Plaintiff*

Page 2 of 2



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## <u>ADMINISTRATIVE ORDER #371</u>

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act[1] (the "CVA") within that jurisdiction, I hereby order as follows:

1. This Order applies to all cases filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the CVA, including any such matters filed before the one-year window commenced on August 14, 2019, and which were then stayed pending the opening of the window on August 14, 2019.

2. While a steering committee negotiates a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, all Preliminary Conferences currently scheduled or requested as of the effective date of this Order, and any requests for Preliminary Conferences made after the effective date of this Order are adjourned to a control date of January 31, 2020.[2]

3. The time to respond to any discovery demands served by the parties as of the effective date of this Order is adjourned without a date. No demands for discovery shall be served by any party until further Order of this Court.

4. Plaintiffs' time to respond to stipulations and orders that consent to or direct the production of identifying information, consisting of a plaintiff's name (including maiden name, if any), date of birth, social security number, parents and/or guardian's names, current address, and address at the time of the alleged abuse, for plaintiffs proceeding under pseudonyms is extended to December 20, 2019. Plaintiffs shall provide such identifying information to defense counsel in a manner other than disclosure in a public filing on NYSCEF and as

_____

[1] L. 2019 c.11.

[2] Parties may make an application to extend this, and other deadlines, as necessary.

agreed to by the parties. Nothing in this Order prevents plaintiffs from voluntarily providing such identifying information at any time.

5. All papers in opposition to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §3211 or §3212, but excluding motions to proceed anonymously or by pseudonym, are adjourned until Tuesday, January 31, 2020. Should the motion(s) not be resolved and withdrawn by the parties as of that date, the Court will set any additional due dates as necessary. No motions, other than motions to proceed anonymously or by pseudonym, shall be filed prior to January 31, 2020 without permission of the Court. As such, no motions to dismiss under CPLR §3211 or §3212 shall be filed prior to January 31, 2020.

6. The time to answer, move against, or otherwise respond to any complaint that has been served as of the effective date of this Order is extended until further Order of the Court. This Order supersedes any due dates for answers or motions previously stipulated to by the parties and/or ordered by this Court.

7. The time to answer, move against, or otherwise respond to any complaint that is served after the effective date of this Order, but prior to January 31, 2020, shall be extended until a date stipulated to by the parties or as directed by further Order of the Court.

8. Notwithstanding any stipulation or Court Order to the contrary, no motion to sever shall be filed prior to January 31, 2020. Consistent with the CPLR, motions to sever may be filed after January 31, 2020.

9. Counsel shall make a good faith effort to resolve any motions to dismiss or motions to sever prior to filing such motions.

Dated: December 11, 2019

_George J. Silver_

Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts

Case 1:20-cv-01514   Document 1-1   Filed 02/20/20   Page 27 of 29



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## ADMINISTRATIVE ORDER #371
## AMENDED

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act[1] (the "CVA") within that jurisdiction, I hereby order as follows:

1. This Order applies to all cases filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the CVA, including any such matters filed before the one-year window commenced on August 14, 2019, and which were then stayed pending the opening of the window on August 14, 2019.

2. While a steering committee negotiates a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, all Preliminary Conferences currently scheduled or requested as of the effective date of this Order, and any requests for Preliminary Conferences made after the effective date of this Order are adjourned to a control date of January 31, 2020.[2]

3. The time to respond to any discovery demands served by the parties as of the effective date of this Order is adjourned without a date. No demands for discovery shall be served by any party until further Order of this Court.

4. Plaintiffs' time to respond to stipulations and orders that consent to or direct the production of identifying information, consisting of a plaintiff's name (including maiden name, if any), date of birth, social security number, parents and/or guardian's names, current address, and address at the time of the alleged abuse, for plaintiffs proceeding under pseudonyms is extended to December 20, 2019. Plaintiffs shall provide such identifying information to

---

[1] L. 2019 c.11.

[2] Parties may make an application to extend this, and other deadlines, as necessary.

defense counsel in a manner other than disclosure in a public filing on NYSCEF and as agreed to by the parties. Nothing in this Order prevents plaintiffs from voluntarily providing such identifying information at any time.

5. All papers in opposition to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §3211 or §3212, but excluding motions to proceed anonymously or by pseudonym, are adjourned until January 31, 2020. Should the motion(s) not be resolved and withdrawn by the parties as of that date, the Court will set any additional due dates as necessary. No motions, other than motions to proceed anonymously or by pseudonym, shall be filed prior to January 31, 2020 without permission of the Court. As such, no motions to dismiss under CPLR §3211 or §3212 shall be filed prior to January 31, 2020.

6. The time to answer, move against, or otherwise respond to any complaint that has been served as of the effective date of this Order is extended until further Order of the Court. This Order supersedes any due dates for answers or motions previously stipulated to by the parties and/or ordered by this Court.

7. The time to answer, move against, or otherwise respond to any complaint that is served after the effective date of this Order, but prior to January 31, 2020, shall be extended until a date stipulated to by the parties or as directed by further Order of the Court.

8. Notwithstanding any stipulation or Court Order to the contrary, no motion to sever shall be filed prior to January 31, 2020. Consistent with the CPLR, motions to sever may be filed after January 31, 2020.

9. Counsel shall make a good faith effort to resolve any motions to dismiss or motions to sever prior to filing such motions.

Dated: December 11, 2019

_____
Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts

FILED: NEW YORK COUNTY CLERK 02/04/2020 10:21 AM
NYSCEF DOC. NO. 8   Case 1:20-cv-01514   Document 1-1   Filed 02/20/20   Page 29 of 29   RECEIVED NYSCEF: 02/04/2020

INDEX NO. 950118/2019



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## ADMINISTRATIVE ORDER #40

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act (the "CVA") within that jurisdiction, I hereby order as follows:

1. Following consultation with a steering committee that continues to negotiate a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, the adjournment of all CVA matters is extended to a control date of Tuesday, February 11, 2020.

2. Administrative Order #371 remains in effect until February 11, 2020.

3. The steering committee will assemble for a meeting on February 11, 2020 at 2:00 PM.

Dated: February 4, 2020

_Geaye J. Silver_
Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts